# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON


WILLIAM G. JONES,                              :

                              Plaintiff,

        -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                          Defendant.           :

Case No. 3:08-cv-129

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

---

## REPORT AND RECOMMENDATIONS

---

        Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

        Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6ᵗʰ Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423.  To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations.  20 C.F.R. §404.1520 .  First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on October 31, 2003, alleging disability from August 1, 2002, due to back pain, diabetes, chronic obstructive pulmonary disease, hypertension, and panic attacks. (Tr. 69-71; 78). Plaintiff's application was denied initially and on reconsideration. (Tr. 50-53; 56-58). A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 363-94), who determined that Plaintiff is not disabled. (Tr. 23-40). The Appeals Council denied Plaintiff's request for review, (Tr. 4-6), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff met the insured status requirements of the Act through December 31, 2005. (Tr. 29, ¶ 1). Judge Padilla then found that Plaintiff has severe lumbar strain but that he does not have an impairment or combination

of impairments that meets or equals the Listings. (Tr. 30, ¶ 3; Tr. 32, ¶ 4). Judge Padilla found further that Plaintiff has the residual functional capacity to perform a limited range of medium work. (Tr. 33, ¶ 5). Judge Padilla then used sections 203.11 through 203.13 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 38-39, ¶ 10). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 39).

A December, 2000, sensory nerve conduction test of Plaintiff's legs revealed very mild abnormalities, (Tr. 123). A January 26, 2001, MRI of Plaintiff's lumbar spine indicated some facet disease of Plaintiff's lower back. (Tr. 126).

Examining psychologist Dr. Flexman reported on December 23, 2003, that Plaintiff had a mild gait disturbance, that his mood was good, he was oriented, his attention was poor, and that his concentration was good. (Tr. 156-59). Dr. Flexman also reported that Plaintiff's intellectual functioning was average, his recent and remote memory was good, his judgment was fair, and that his obsessive thinking concerning somatic or other psychological problems was judged to be out of proportion with reality and somatization was present. *Id.* Dr. Flexman identified Plaintiff's diagnosis as somatoform disorder and he assigned Plaintiff GAF as 65. *Id.* Dr. Flexman opined that Plaintiff's ability to understand, remember, and carry out short, simple instructions was normal, his ability to make judgments for simple work-related decisions was normal, his ability to attend and concentrate were normal, and that his ability to interact with others was slightly impaired. *Id.*

Treating physician Dr. Hanshaw reported on January 16, 2004, that he treated Plaintiff for chronic and recurrent pain of degenerative arthritis and lumbosacral pain, prior history

of lipid abnormalities, and abnormality of his cholesterol and triglycerides, that he had a history of diabetes and peripheral diabetic neuropathy, and that he had persistent, recurrent problems. (Tr. 160-61). Dr. Hanshaw also reported that Plaintiff had multiple somatic complaints, multiple problems with recurrent abdominal pain, a prior history of diverticular disease with episodes of diverticulitis, that his coronary artery disease precluded him from some daily activities, and that he was unable to pursue gainful employment due to his complaints. *Id.*

Treating physician Dr. Reddy of the Dayton Pain Center reported on May 26, 2004, that he first saw Plaintiff on October 4, 2003, and that Plaintiff had a history of a back injury, high blood pressure, diabetes, COPD, ulcer disease, low back problems, depression, and anxiety. (Tr. 179-80). Dr. Reddy also reported that Plaintiff had a restricted range of motion, positive straight leg raising on the right, lumbosacral and sacroiliac tenderness on the right, that he was being treated with medications, and that he was stable. *Id.* Dr. Reddy noted that Plaintiff's final diagnoses included COPD, diabetes mellitus, hypertension, history of ulcer disease, facet arthropathy of the lumbar spine, right sacroiliitis, right lumbar radiculopathy, intravertebral disc disease of the lumbar spine, and sprain and strain of the lumbar spine and the last thoracic region. *Id.* Dr. Reddy opined that Plaintiff was restricted to lifting up to ten pounds frequently and up to 20 pounds occasionally. *Id.*

A November 11, 2005, x-ray of Plaintiff's lumbar spine revealed degenerative changes of the lumbar spine without evidence of acute pathology. (Tr. 194.

In March, 2006, Dr. Hanshaw reported that he first saw Plaintiff in 2000, at which time he was referred for abdominal discomfort and chronic back and lumbar spine discomfort, that multiple physicians had treated him with polypharmacy, exercise and physical therapy programs,

that his diagnoses were chronic thoracolumbar strain with lumbosacral strain and radicular pain, abdominal aortic aneurysm, gastroesophageal reflux disease with peptic ulcer disease, pancreatic insufficiency with biliary duskiness, type II diabetes, hypertension, and anxiety disorder secondary to chronic pain, and that his physical findings were consistent with those diagnoses. (Tr. 214-19). Dr. Hanshaw also reported that Plaintiff appeared to be stable, that he had not progressed in his disease state, he was not able to pursue gainful employment due to chronic lumbar and thoracic pain, he had difficulty with mobility and daily activities due to pain, difficulty with stiffness and recurrent epigastric discomfort, and that he was not able to pursue employment due to a concomitant [sic] of multiple diagnoses. *Id.* Dr. Hanshaw opined that Plaintiff was able to sit, stand, and walk each for one hour, that he could alternately sit/stand/walk for four hours, that he could not perform those activities on a full-time basis, and that he was able to lift/carry up to ten pounds occasionally. *Id.* Dr. Hanshaw also opined that Plaintiff was not able to perform either light or sedentary work, that he needed complete freedom to rest frequently without restrictions, and that it could be reasonably expected that he would be absent five or more days a month due to exacerbation of his conditions. *Id.*

Dr. Reddy reported on April 3, 2006, that Plaintiff had long-standing issues with chronic severe pain with some disk bulging at L3-L4 and L4-L5 confirmed by MRI performed on April 29, 2005, that he had some mild sensory abnormalities at L4-L5 on the right, his diagnoses include a history of thoracic and lumbar strains, intervertebral disk disease, lumbar radiculopathy on the right, right sacroiliitis, and lumbar facet arthropathy, and that he also had COPD, diabetes, hypertension, and peptic ulcer disease. (Tr. 223-24). Dr. Reddy also reported that Plaintiff had received sacroiliac joint injections, lumbar ligament injections, and sciatic nerve blocks, and that

he had been receiving OxyContin for an extended period of time as well Valium as a muscle relaxer. *Id.* Dr. Reddy noted that Plaintiff's muscle stretch reflexes were full and symmetric, that he had significant weakness especially regarding the hip girdle musculature, gluteus medium and maximus including hip flexion, knee extension, and ankle dorsiflexion, and that he was deconditioned. *Id.* Dr. Reddy also noted that Plaintiff's lumbar range of motion was reduced, that he had significant disability due to the pain conditions with the comorbidity of diabetes and COPD, and that he was fully disabled. *Id.*

Dr. Reddy reported on May 25, 2006, that his evaluation of Plaintiff's functional capacity was based on history and physical examination but not solely based on radiology study, that a repeat examination revealed significant limitation in lumbar flexion, and that Plaintiff was not capable of being employed on a full time basis even in a sedentary position. (Tr. 362).

Plaintiff alleges in his Statement of Specific Errors that the Commissioner erred by finding that his is capable of performing a limited range of medium work and by failing to the proper evidentiary weight to his treating physicians' opinions. (Tr. 8). Essentially, Plaintiff's position is that the Commissioner did not properly weigh the evidence.

First, the Court notes that Plaintiff met the insured status requirement of the Act through December 31, 2005. Of course, Plaintiff's burden is to prove that he was disabled on or before the last date on which he met the special earnings requirement of the Act. *Richardson v. Heckler,* 750 F.2d 506, 509 (6th Cir. 1984) (citation omitted); *Moon v. Sullivan,* 923 F.2d 1175, 1182 (6th Cir. 1990). Post insured status evidence of a claimant's condition is generally not relevant. *Bagby v. Harris,* 650 F.2d 836 (6th Cir. 1981); *see also, Bogle v. Secretary of Health and Human Services,* 998 F.2d 342 (6th Cir. 1993). However, such evidence will be considered if it establishes

that an impairment existed continuously and in the same degree from the date the insured status expired. *Johnson v. Secretary of Health and Human Services,* 679 F.2d 605 (6th Cir. 1982). Because his insured status expired on December 31, 2005, Plaintiff must establish that he became disabled on or before that date.

Plaintiff essentially argues that the Commissioner erred by failing to give great, if not controlling, weight to Dr. Hanshaw's and Dr. Reddy's opinions that he is disabled.

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had

a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

As noted above, both Dr. Hanshaw and Dr. Reddy opined that Plaintiff is disabled. However, neither physician's opinion is supported by his objective findings or by the objective medical tests of record and they are inconsistent with the other evidence of record. For example, Dr. Hanshaw did not provide any objective medical findings to support his opinion. Rather, Dr. Hanshaw seemed to rely on Plaintiff's subjective complaints to reach his conclusion. In addition, his clinical notes contain few, if any, objective medical findings. *See, e.g.,* Tr. 196-209; 214-22.

Although Dr. Reddy referred to some objective clinical findings in support of his opinion, he failed to describe those findings as rising to the level of causing total disability.

Specifically, Dr. Reddy reported that Plaintiff had a somewhat restricted range of motion, positive straight leg raising, and tenderness. Subsequent to the expiration of Plaintiff's insured status, Dr. Reddy describe Plaintiff's sensory abnormalities as, at worst,"mild". Similar to Dr. Hanshaw, Dr. Reddy's clinical notes primarily reflect Plaintiff's subjective complaints and few, if any, positive physical findings. *See, e.g.,* Tr. 225-361.

Drs. Hanshaw's and Reddy's opinions are also not supported by the objective medical evidence, specifically the x-rays and MRI's of record. For example, A January, 2001, MRI revealed "some" facet disease of Plaintiff's lower back, a November, 2005, x-ray of Plaintiff's lumbar spine indicated simply the presence of degenerative changes, and, according to Dr. Reddy, an April, 2005, MRI revealed "some" disk bulging.

Finally, Drs. Hanshaw's and Reddy's opinions are inconsistent with the reviewing physician's opinion of January, 2004. *See,* Tr. 162A-65.

At this juncture, the Court notes that a reviewing physician reported in June, 2004, that Plaintiff has the residual functional capacity for, at best, light work. (Tr. 181-86). The record indicates that the reviewing physician relied primarily on Dr. Reddy's May, 2004, opinion. However, as noted above, Dr. Reddy's opinion is not supported by his own findings, his clinical notes, or the objective test results. It follows, then, that the reviewing physician's June, 2004, opinion is not entitled to significant weights.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a

verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

March 11, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).